1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BERSTER TECHNOLOGIES, LLC,

11            Plaintiff,                    Civ. No. S-11-1541 KJM JFM
           vs.
12
     COY CHRISTMAS, et al.,                 ORDER
13
              Defendants.
14   _____/

15            This case was on the court's calendar on September 14, 2011 for argument on

16   defendant's motion to dismiss.  Paul Andre and Yuridia Caire, King & Spalding LLP, appeared

17   for defendants; Scott Pink, Daniel Croxall and Rajiv Dharnidharka, DLA Piper LLP, appeared

18   for plaintiff.

19   I.  Background

20            On June 20, 2011, plaintiff Berster Technologies, LLC, doing business as Chip

21   Connect, filed a first amended complaint naming five defendants:  Coy Christmas, Jim Ronding,

22   BGRMods LLC, Calibur11 LLC and Einsteinmodz.  The complaint comprises sixteen claims:

23   (1) breach of express contract against Christmas and Calibur11; (2) breach of implied-in-fact

24   contract against Christmas and Calibur11; (3) partnership by estoppel against Christmas and

25   Calibur11; (4) fraud against Christmas, BGRMods and Calibur11; (5) breach of fiduciary duty

26   against Christmas; (6) breach of contract against BGRMods, Christmas and Ronding; (7) breach

1   of implied covenant of good faith and fair dealing against BGRMods, Calibur11, Christmas and

2   Ronding; (8) unjust enrichment against BGRMods, Calibur11, Christmas and Ronding;

3   (9) copyright infringement against all defendants; (10) misappropriation of trade secrets against

4   Christmas and Calibur11; (11) rescission of assignment of patent against Christmas and

5   Calibur11; (12) conversion against Christmas, Calibur11, BGRMods and Ronding; (13)

6   declaratory relief against all defendants; (14) accounting against Christmas and Calibur11;

7   (15) money due on open account and/or open book account against BGRMods, Christmas, and

8   Ronding; and (16) writ of attachment against BGRMods, Christmas and Ronding.

9           On July 13, 2011, defendants filed a motion to dismiss, arguing that defendant

10  Ronding had not been served; that there is no personal jurisdiction over any of the defendants;

11  that venue is not proper in this district; and that the complaint fails to state a claim as to claims

12  one, two, three, four, seven, eight, nine, eleven and thirteen through sixteen.  ECF No. 17.

13          On July 25, 2011, plaintiff dismissed defendant Jim Ronding.  ECF No. 22.  A

14  day later, it sought leave to conduct discovery relating to the question of personal jurisdiction

15  over the remaining defendants.  ECF No. 24.  On August 15, 2011, the magistrate judge granted

16  plaintiff's request.  ECF No. 37.

17          On August 16, 2011, plaintiff agreed to withdraw its request for discovery

18  regarding personal jurisdiction; defendants waived any challenge to personal jurisdiction and

19  venue in this district and withdrew their motion to dismiss insofar as it challenged personal

20  jurisdiction and venue.  ECF No. 38.

21          On August 31, 2011, plaintiffs filed their opposition to the motion to dismiss as

22  well as a notice of voluntary dismissal of claims three, seven, eight, fifteen and sixteen in the

23  First Amended Complaint.  ECF No. 46.

24          Defendants filed a reply on September 7, 2011, supporting it with several

25  declarations and exhibits.  ECF No. 51.  On September 9, 2011, plaintiffs filed a motion to strike

26  the declarations as well as portions of the factual statement in the reply.  ECF No. 52.

1    Based on this procedural history, the court considers the motion to dismiss only as

2    to claims one, two, four, nine, eleven, thirteen and fourteen.

3    II.  Standards For A Motion To Dismiss

4    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

5    dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

6    dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

7    under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699

8    (9th Cir. 1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud

9    allegations under the more particularlized standard of Rule 9(b) of the Federal Rules of Civil

10   Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

11   Although a complaint need contain only "a short and plain statement of the claim

12   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a

13   motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to

14   'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

15   1937, 1949 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  A

16   complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-

17   me accusation" or "'labels and conclusions'" or "'a formulaic recitation of the elements of a

18   cause of action.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining

19   whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-

20   specific task that requires the reviewing court to draw on its judicial experience and common

21   sense." *Iqbal*, 129 S.Ct. at 1950.  Ultimately, the inquiry focuses on the interplay between the

22   factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v.*

23   *King & Spalding*, 467 U.S. 69, 73 (1984).

24   In making this context-specific evaluation, this court must construe the complaint

25   in the light most favorable to the plaintiff and accept as true the factual allegations of the

26   complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

1  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

2  (quoted in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject

3  to judicial notice" or to material attached to or incorporated by reference into the complaint.

4  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

5  consideration of documents attached to a complaint or incorporated by reference or matter of

6  judicial notice will not convert a motion to dismiss into a motion for summary judgment.

7  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks School of Business v.*

8  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d 977, 980

9  (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss,

10  generally court is limited to face of the complaint on 12(b)(6) motion).

11  Defendants have supported their reply with declarations from Christmas and

12  attorney Yuridia Caire, copies of print-outs from internet news sources about Steven Frazier and

13  copies of two invoices Chip Connect sent to Calibur11, as well as the Memorandum of

14  Understanding plaintiff sent to Christmas.  ECF Nos. 51-1 through 51-5.  Plaintiff has moved to

15  strike Coy's declaration and the internet stories about Frazier, arguing that they are not

16  cognizable on a motion to dismiss.  ECF No. 52.  Plaintiff also argues that portions of

17  defendants' factual recitation should be stricken, as it is based on the objectionable material

18  supporting the reply.  Defendants respond that the material in Christmas's declaration and the

19  documents about Frazier are offered to rebut factual statements in the opposition to the motion to

20  dismiss.  ECF No. 54.  Whether or not plaintiff has misstated facts in its memorandum of points

21  and authorities, the court will rely on the first amended complaint and on applicable legal

22  authorities, not on any characterizations of fact included in the points and authorities.  *Lee v. City*

23  *of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (a 12(b)(6) motion tests the legal sufficiency

24  of the complaint and review is limited to the complaint).  The motion to strike Christmas's

25  declaration and its exhibits about Frazier is granted.

26  /////

4

1    At hearing, defendants argued that the court could consider an invoice from Chip

2  Connect to Calibur11 attached to Caire's declaration because the invoice is mentioned in the

3  complaint.  *See* ECF No. 51-5 at 2 (invoice).  A document is not "outside" the complaint for the

4  purpose of a 12(b)(6) motion if the complaint refers to the document and its authenticity is not

5  questioned.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997) (quoting *Branch v. Tunnell*, 14

6  F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa*

7  *Clara*, 307 F.3d 1119 (9th Cir. 2002)).  The court does not find any mention of the invoice itself

8  in the complaint.  Plaintiff does allege that despite its misgivings, it shipped Game Vault

9  technology to Christmas; it does not mention invoices, but rather only that Christmas wired

10  money to cover engineering expenses related to Game Vault development.  FAC ¶¶ 45-46.  As

11  the complaint does not refer to the invoice, the court will not consider it.

12    Plaintiff does not object to the court's consideration of the Memorandum of

13  Understanding attached to Caire's declaration.  ECF No. 51-6 2-3.  As it is mentioned in the

14  complaint and plaintiff does not dispute its authenticity, the court will consider it.  *See* FAC

15  ¶¶ 41, 44.

16  III.  Allegations Of The First Amended Complaint

17    In 2009 plaintiff Chip Connect's predecessor, acting through its employee Steven

18  Frazier, first entered into an Exclusive Reseller Agreement with BGRMods, acting through its

19  president Christmas; the agreement covered resale of Chip Connect's product Intensafire, which

20  modifies a video game controller.  FAC ¶¶ 16-18.  In April 2010, Christmas formed

21  EinsteinModz to market peripherals, including Intensafire.  FAC ¶ 20.

22    In June 2010, Frazier, Christmas and Sid Garrand, an associate of Christmas's,

23  met at the Electronic Entertainment Expo and discussed the development of a 3-D cover for

24  game boxes.  The three agreed to form a partnership to create, design and sell the product, to be

25  called Game Vault.  FAC ¶ 22. As a result of Frazier's status as an employee, Chip Connect

26  owns the intellectual property rights in Frazier's designs; Chip Connect also owned Frazier's

interest in the partnership with Christmas and Garrand.  FAC ¶ 23.  One member of Chip Connect's limited liability corporation, Greg McCarry, discussed the partnership in July 2010 and shortly after that, Christmas distributed a financial proforma for the partnership, projecting gross income of $3 million and listing the partners as Christmas, Frazier and Garrand.  FAC ¶¶ 25-26.

Between July and December 2010, Frazier worked almost exclusively on the Game Vault.  FAC ¶ 27.  During this time, Christmas repeatedly promised to provide the necessary paperwork for the partnership, but did not follow through.  Nevertheless, he was actively marketing the product and obtained orders for it, without notifying Chip Connect.  During the same time, BGRMods began to ignore its obligation to market Intensafire.  FAC ¶ 31.

In December 2010, Christmas asked Frazier about developing a European market for the Game Vault with Frazier, but not Chip Connect, as the partner with Garrand.  FAC ¶ 32.  Christmas also said he had retained an attorney to prepare a patent application for the Game Vault and then asked Frazier to assign his interest in the Game Vault to an entity named Calibur11, Inc., which would allow Christmas to move the business forward.  *Id.*  Frazier signed the assignment based on Christmas's assurance he would provide documentation of Chip Connect's ownership interest in the partnership.  FAC ¶ 33.  However, no consideration was provided for the assignment and no documentation regarding the patent application was provided to Frazier or Chip Connect.  In addition, plaintiff believes that Calibur11 had not been formed at that time.  FAC ¶ 34.

Although he did not provide organizational documents for the partnership, Christmas began to market the Game Vault under the name Calibur11, set up a website and obtained financing for its manufacture, despite his initial agreement that Chip Connect would do the manufacturing.  FAC ¶¶ 35-36.  Christmas began to divert money from the sales of Intensafire to the Game Vault project but told Chip Connect that BGRMods could not pay what it owed under the reseller agreement.  *Id.*  In addition, Christmas told McCarry that his interest in

the partnership was shared with some investors, that a European entity was involved, and that the partnership would take the form of a corporation, not an LLC.  FAC ¶ 37.

In May 2011, Christmas formed an LLC called Calibur11 for the Game Vault business; he did not tell the other partners.  FAC ¶ 40.  He pressed Frazier and Chip Connect to finish the circuit boards for the Game Vault, but still did not provide them with organizational papers for the partnership.  Chip Connect sent Christmas a Memorandum of Understanding (MOU), outlining the interests in an entity called Calibur11 LLC, with Christmas allotted a 50 percent share, the other two partners with a 20 percent share each, and a third party for European operations with a 10 percent share.  FAC ¶ 41.  The complaint identifies the other partners as Chip Connect and Garrand, while the MOU itself identifies the parties to the agreement as Christmas, Frazier and Garrand.  *Id.*; *see also* ECF No. 51-6 at 2.  The MOU also provides that "[t]he Parties hereby understand and agree that Steve [Frazier] desires to assign his Member interest in the LLC to Berster Technologies LLC dba Chip Connect and that none of the Parties shall object thereto."  *Id.* at 3 ¶ 3.

On May 18, 2011, Chip Connect asked Christmas for the money due under the reseller agreement, but Christmas said that neither he nor BGRMods had the money to pay the debt.  FAC ¶ 42.  Chip Connect told Christmas it would not send the Game Vault to Christmas for the Electronics conference if Christmas did not sign the MOU it had sent on May 16, 2011.  FAC ¶ 43.  Christmas called Frazier, denied that he or Chip Connect had any interest in the partnership but claimed instead that Chip Connect would receive a 20 percent royalty from the sale of Game Vault.  FAC ¶ 44.  He also told Chip Connect "his people" would send a proposal in writing, but none arrived.  *Id.*  Nevertheless, Chip Connect sent Christmas the GoW Game Vault Board, including its copyrighted GoW Game Vault Code.  FAC ¶ 45.  On May 23, 2011, Christmas wired Chip Connect $22,500, which was only a small portion of what was needed for engineering expenses.  FAC ¶ 47.

/////

1    On May 27, 2011, a lawyer acting on Christmas's behalf sent Chip Connect a

2    letter asserting that Frazier's and Chip Connect's relationship with Christmas was that of a

3    service contractor, not a partnership, and demanded the remaining Game Vault related items in

4    exchange for 20 percent of the net profits, up to a maximum of $500,000.  FAC ¶ 47.  Chip

5    Connect's counsel sent Christmas a cease and desist letter, demanding that Christmas cease

6    selling the Intensafire and any Game Vault products containing Chip Connect's proprietary

7    technology.  FAC ¶ 48.

8    IV.  Analysis

9         A.  Claims One And Two – Breach of Contract And Implied In Fact Contract,
              Against Christmas and Calibur11

10

11   Defendants argue that the complaint fails to state a claim for breach of contract

12   against Calibur11, which was not formed until May 2011 according to the complaint, or against

13   Christmas, because the alleged contract is not attached, there is no description of what Christmas

14   was supposed to do under any such contract, and Calibur11 was not in existence at the time.  In

15   their reply, defendants argue that even if there is a contract, Frazier, not plaintiff, was a party to

16   it.

17   Plaintiff counters that the complaint clearly describes Christmas's agreement to

18   form the partnership to develop the Game Vault technology and Frazier's agreement to assign

19   his interest in any contract to Chip Connect, and that the alter ego doctrine allows it to pursue

20   Calibur11 for the breach of contract claim.

21   The elements of a cause of action for breach of contract are "(1) the existence of

22   the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach

23   and (4) the resulting damages to the plaintiff."  *Oasis West Realty, LLC v. Goldman*

24   51 Cal.4th 811, 821 (2011); *General Sec. Services Corp. v. County of Fresno*, __ F.Supp.2d ___,

25   2011 WL 3882522, at *6 (E.D. Cal. Sep. 2, 2011).  There is no requirement that plaintiff attach a

26   copy of the contract to his complaint.  *Black & Veatch v. Modesto Irrigation Dist.*, 2011 WL

2636218, at *3 (E.D. Cal. Jul. 5, 2011); *Daly v. United Healthcare Ins. Co*, 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1 2010); *but see Joe Hand Promotions, Inc. v. Campbell*, 2011 WL 3439217, at *5 (E.D. Cal. Aug. 5, 2011).

"'A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct.'" *Gomez v. Lincare, Inc*, 173 Cal.App.4th 508, 525 (2009) (quoting *Yari v. Producers Guild of America, Inc*. 161 Cal.App.4th 172, 182, (2008).

### 1. Christmas

Defendants argue the complaint does not sufficiently allege that Christmas entered into any contract with Chip Connect, as all the allegations describe three men discussing the possibility of entering into a partnership.  ECF No. 51 at 8.  They contend there is no mention of Frazier's share in any corporation being assigned to Chip Connect until the MOU, which was not drafted until May 2011, which in turn renders the complaint's allegations of earlier assignment implausible.

The MOU provides that the parties, described as Frazier, Christmas and Garrand, agreed to form Calibur11 "with each individual having a membership interest in the entity," and that the parties "desire to memorialize the intentions of the Parties through prior verbal agreements into this MOU."  ECF No. 51-6 at 2.  It continues that "[f]ollowing original discussions, the Parties now agree" about the percentage assigned to each party and that "the Parties hereby understand and agree that Steve desires to assign his Member interest in the LLC to Berster Technologies LLC dba Chip Connect and that none of the parties shall object thereto." *Id.*

The complaint alleges that Christmas, Garrand and Frazier met at the E3 Conference in Summer 2010 to discuss a redesign of a product, which would eventually become Game Vault, and "agreed to form a partnership of equal shares to create, design, and sell the Game Vaults ("Partnership").  In this partnership, Frazier, through his employer Chip Connect,

1  would provide the research and development and manufacturing for the product . . . ."  FAC ¶

2  22.  According to the complaint, "[a]s a result of his employment relationship with Chip

3  Connect, Chip Connect owns all intellectual property Frazier creates as an employee. . . .  It was

4  agreed that Frazier's interest in the Partnership would be owned by Chip Connect."  FAC ¶ 23.

5  Shortly after that, McCarry, one of Chip Connect's limited liability members, began to

6  communicate with Christmas "to finalize the organizational elements of the Partnership."  FAC ¶

7  25.[1]  During McCarry's further dealings with Christmas in February 2011, Christmas discussed

8  Chip Connect's 20 percent interest in the partnership and promised to send organizational

9  documents.  FAC ¶ 37.  These allegations are not contradicted by the MOU, as Christmas seems

10  to suggest, and provide enough information to support the inference that Christmas understood

11  that his agreement was with Chip Connect, whether by virtue of what Frazier told him, or of

12  Chip Connect's ownership of Frazier's intellectual property, or of his direct dealings with

13  McCarry or all three.  These pleadings are sufficient, if not overwhelmingly so, to satisfy

14  plaintiff's burden at this stage of litigation.

15          The complaint sufficiently describes the existence of the agreement formed at the

16  E3 Conference; plaintiff's assignment of Frazier to work on Game Vault development;

17  Christmas's failure to provide the necessary documentation of the agreement; his unilateral

18  formation of Calibur11 and subsequent refusal to assign plaintiff its interest in the LLC; and the

19  harm to plaintiff.  FAC ¶¶ 22-23, 27, 29, 33.  It also describes the parties' conduct after the E3

20  Conference, sufficient to manifest their alleged agreement to develop and market the Game

21  Vault technology.  FAC ¶¶ 27, 37, 38.

22  /////

23  /////

24  _____

25  [1]  In a footnote, defendants say that plaintiff uses the terms "express contract" and
    "express Partnership Agreement" interchangeably, which "further confuses the issues."  ECF
    No. 17 at 15 n.3.  They do not elaborate on this statement or suggest that this should be a basis

26  for dismissal.

10

2. <u>Calibur11</u>

Defendant argues that Calibur 11 cannot be liable for a breach of a contract that occurred before it came into existence.  ECF No. 51 at 6.  Plaintiff counters that it has sufficiently pleaded an alter ego theory to support Calibur11's liability.

In California, "[t]he alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests."  *Mesler v. Bragg Management*, 39 Cal.3d 290, 300 (1985).

> As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.  When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation.

*Id.* (quoting Comment, *Corporations: Disregarding the Corporate Entity: One Man Company*, 13 Cal. L. Rev. 235, 237 (1925)).

Although courts consider a lengthy list of factors in determining whether a plaintiff has sufficiently pled an alter ego theory, there are two general requirements: (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual do not exist and (2) the potential of an unjust result if the fiction of a separate corporate identity is maintained.  *Securities and Exchange Commission v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), *amended on denial of rehearing*, 335 F.3d 834 (9th Cir. 2003), (citing *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1998); *Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811-12 (2010) (quoting *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*, 69 Cal.App.4th 223, 249-50 (1999) (listing non-exclusive factors for alter ego inquiry); *Qwest Comm. Corp. v. Herakles, LLC.*, 2008 WL 783343, at *4 (E.D. Cal. Mar. 20, 2008) (among factors showing unity of interest are financial issues, issues of corporate formality, ownership issues, commingling issues).  Ownership is a prerequisite to alter ego liability; a person "must own at least a portion of a corporation before an alter ego

1  relationship is deemed to exist under California law." *Hickey*, 322 F.3d at 1130.  The passive

2  enjoyment "of the benefits of the disregard of the corporate entity" is not sufficient for alter ego

3  liability.  *Firstmark Capital Corp.*, 859 F.2d at 95.  The general inquiry is the same whether the

4  entity sought to be held liable is another corporation instead of a person.  *Mesler*, 39 Cal.3d at

5  300.  Plaintiff alleges that Calibur11 is the alter ego of Christmas for purposes of its breach of

6  contract claim.

7           According to the FAC, Christmas is an employee of and principal in Calibur11;

8  he formed Calibur11 without providing the confirmation of the equity shares to the other

9  principals; he improperly funneled proceeds from the sale of Intensafire into Calibur11; he

10 diverted assets, funds and revenue of Calibur11 to his own purposes; and commingled and

11 depleted funds for BGRMods and Calibur11.  FAC ¶¶ 5, 31, 41, 51, 81b.  These allegations are

12 sufficient to withstand a motion to dismiss at the pleading stage.

13                    B. <u>Claim Four – Fraud – Against Christmas, BGRMods, and Calibur11</u>

14           In California, "'[f]raud is an intentional tort, the elements of which are

15 (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4)

16 justifiable reliance; and (5) resulting damage.'"  *Intrieri v. Superior Court*, 117 Cal.App.4th 72,

17 85-86 (2004) (quoting *Cicone v. URS Corp.*, 183 Cal.App.3d 194, 200 (1986)).

18           Under Rule 9(b), a plaintiff who alleges fraud "must state with particularity the

19 circumstances constituting the fraud," but may "aver[] generally" the state of mind animating the

20 fraud.  The pleading must "'be specific enough to give defendants notice of the particular

21 misconduct . . . so that they can defend against the charge and not just deny that they have done

22 anything wrong.'"  *Sanford v. MemberWorks, Inc*., 625 F.3d 550, 558 (9th Cir. 2010) (quoting

23 *Kearns v. Ford Motor Co.,* 567 F.3d. 1120, 1124 (9th Cir. 2009)).  To avoid dismissal, the

24 complaint must describe the time, place and specific content of the false representations and

25 identify the parties to the misrepresentations.  *Id*.

26           Defendant argues that plaintiff has not identified any statements of either

                                                         12

1    BGRMods or Calibur11 and has presented only conclusory statements attributed to Christmas.

2    Plaintiff counters that Christmas's statements are adequately pleaded and that BGRMods and

3    Calibur11 are Christmas's alter egos.

4           Plaintiff identifies Christmas's misrepresentations, among others, about the

5    formation of Calibur11 and the inability of BGRMods to pay for Intensafire as a means of

6    covering up his diversion of that money to Game Vault development, and also identifies when

7    these misrepresentations were made.  FAC ¶¶ 32-34, 36, 42, 71.  Plaintiff also describes its

8    alleged justifiable reliance on Christmas's assurances and the resulting harm.  *See, e.g.,* FAC

9    ¶¶ 25, 33, 49, 72, 76-77.  These allegations are sufficient to meet the pleading standard for fraud.

10          As noted above, plaintiff's allegations are sufficient as to Calibur11's alter ego

11   liability.  As to BGRMods, plaintiff alleges only that it is a Minnesota limited liability

12   corporation; that Christmas is an officer, employee and primary negotiator for BGRMods; and

13   that Christmas began to divert money from BGRMods' Intensafire sales to Game Vault

14   development, while telling plaintiff BGRMods could not pay plaintiff.  FAC ¶¶ 2, 5, 17.  These

15   allegations are insufficient to establish BGRMods' liability under an alter ego theory.  *Qwest*

16   *Comm. Corp. v. Herakles, LLC.*, 2008 WL 783343, at *5.

17          Finally, plaintiff argues that corporations are liable for fraud committed by their

18   managing agents, officers or directors.[2]  Although plaintiff may be able to flesh out such a

19   theory, its pleadings are currently inadequate.  *See Persson v. Smart Inventions, Inc.*, 125

20   Cal.App.4th 1141, 1167 (2005); *Hinman v. Westinghouse Elec. Co.*, 2 Cal.3d 956, 958 (1970).

21                    C. <u>Claim Nine – Copyright Infringement Against All Defendants</u>

22          Plaintiff alleges that it has applied for a copyright for Intensafire; that it

23   terminated BGRMods' reseller agreement in a letter dated June 9, but that BGRMods and

24

25          [2]  Plaintiff relies on *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658 (9th Cir. 1982), for
     this rule. The case does in fact state this rule, but is inapposite because in doing so it relies on a
26   California statute dealing with corporate liability for punitive damages.

1   Einsteinmodz continue to market, reproduce and distribute the Intensafire code in violation of

2   plaintiff's copyright; and that Christmas, a principal in BGRMods, had knowledge of the

3   infringing activities and contributed to them.  FAC ¶¶ 18-19, 48-49, 116, 117, 119 & Ex. D

4   (e-mail and letter terminating the agreement).

5          Plaintiff also alleges that it developed the code for the Game Vault products, has

6   applied for a copyright, provided the code to Christmas, who then repudiated the agreement, and

7   yet continues to sell products using Game Vault technology through Calibur11; and that

8   Christmas, a principal in Calibur11 and EinsteinModz, has authorized and induced the copyright

9   violation.  FAC ¶¶ 27, 39, 44, 47-48, 50-51, 113, 124.  Plaintiff also alleges that EinsteinModz

10  has infringed the Game Vault copyright.  FAC ¶¶ 125-126.

11         To state a claim for copyright infringement, plaintiff must establish: (1)

12  ownership of a valid copyright, and (2) copying of constituent elements of the copyrighted work

13  that are original.  *Rice v. Fox Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feast*

14  *Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Courts have recognized two

15  forms of secondary liability for copyright infringement, neither of which requires that the

16  corporate veil be pierced: "contributory copyright infringement is a form of secondary liability

17  with its roots in the tort-law concept of enterprise liability and imputed intent."  *Perfect 10, Inc.*

18  *v. Visa Intl. Service Assn.*, 494 F.3d 788, 794-95 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079

19  (2008); *see In re Napster, Inc. Copyright Litigation*, 2006 WL 1348555, at *3 (N.D. Cal. May

20  17, 2006) ("[t]he degree of control required for vicarious liability is less than that required to

21  pierce the corporate veil").  A defendant is a contributory infringer if he has knowledge of a third

22  party's infringing activities and "induces, causes or materially contributes to the infringing

23  conduct."  *Id.*  "Vicarious copyright liability is an 'outgrowth' of respondeat superior.  In the

24  context of copyright law, vicarious liability extends beyond an employer/employee relationship

25  to cases in which a defendant 'has the right and ability to supervise the infringing activity and

26  also has a direct financial interest in such activities.'"  *A & M Records, Inc. v. Napster*, 239 F.3d

14

1004, 1022 (9th Cir. 2001) (internal citations omitted); *see also Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.,* 742 F.Supp.2d 1101, 1114 (C.D. Cal. 2010) (liability of a corporate officer for infringement).

Plaintiff's allegations are sufficient to state a copyright violation against BGRModz, Calibur11 and Christmas, for they identify the copyright and the allegedly infringing activities. *See, e.g.,* FAC ¶¶ 50 (Christmas is selling plaintiff's copyrighted Game Vault technology), 116 (BGRMods continues to sell Intensafire after the termination of the reseller agreement) & Ex. E (Calibur11 ads for Game Vault). As plaintiff makes nothing but conclusory references to EinsteinModz's involvement in any infringement, however, the motion to dismiss the copyright infringement claim against EinsteinModz is granted.

In their reply, defendants make a fleeting reference to the "first sale" doctrine as defeating the copyright infringement claims and cite to 17 U.S.C. § 109(a). The court declines to consider this issue, not raised in the motion to dismiss and not explained in the reply. *See Sanchez v. City of Santa Ana,* 915 F.2d 424, 431 (9th Cir. 1990) (general rule in the Ninth Circuit is that an appellant may not raise an argument for the first time in a reply brief); *Lopez v. Pagliero,* 2011 WL 4479763, at *9 (E.D. Cal. Sept. 26, 2011) (district court may decline to consider issue raised for first time in reply).

D.  Claim Eleven – Rescission of Patent Assignment Against Christmas and Calibur11

Defendants argue that rescission is a remedy, not a cause of action, and cite cases in support of their position. *See, e.g., Ardente, Inc. v. Shanley*, 2010 WL 546485, at *8 (N. D. Cal. 2010, Feb. 10, 2010). Plaintiff counters with cases suggesting that California law recognizes rescission as a cause of action.[3] *See McCallister v. Patterson Companies., Inc*., 2011 WL 835824, at *1 (N.D. Cal. Mar. 3, 2010 ). An authority on California law says that the state

---

[3] Plaintiff also cites *Tucker v. Oregon Aero, Inc*., 474 F.Supp.2d 1192 (D. Or. 2007), but this case interprets Oregon law and so provides little guidance here.

1    law cause of action has been abolished, 4 B.E. Witkin, California Procedure § 541 at 668 (5th ed.

2    2008), but some California courts appear to recognize its continued viability.  *See Sharabianlou*

3    *v. Karp*, 181 Cal.App.4th 1133, 1144 (2010); *Ribeiro v. County of El Dorado*, 195 Cal.App.4th

4    354, 369-70 (2011); *see Donovan v. RRL Corp*. 26 Cal.4th 261, 278 & n.5 (2001) (a party may

5    rescind a contract if consent is given by mistake; rescission may also be a defense to breach of

6    contract action); *Kuhlberg v. Washington Mutual Bank*, 2011 WL 1431512, at *6 (S.D. Cal.

7    2011).

8             In this case, plaintiff alleges it is entitled to rescind the assignment of its Game

9    Vault patent, if it is found to be valid, on the grounds of fraud, vagueness and failure of

10   consideration.  Plaintiff has adequately pleaded this cause of action against Christmas and

11   against Calibur11 under an alter ego theory. *See* FAC ¶¶ 32-34.

12             E.  <u>Claim Thirteen – Declaratory Relief Against All Defendants</u>

13             Plaintiff seeks a declaration that it owns a 20 percent interest in Calibur11, that it

14   is entitled to 20 percent of all proceeds from the exploitation of the Game Vault technology, and

15   that it is the sole owner of all interest in the Intensafire code as well as the Game Vault

16   technology.  Defendants argue that this claim is subsumed in plaintiff's other claims and cannot

17   stand alone as a separate cause of action.  Plaintiff counters it is appropriate to seek declaratory

18   relief resolving disputes about the validity of contracts.

19             Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court may declare

20   the rights of an interested party who seeks the declaration, whether or not further relief could be

21   sought.  A district court has the discretion to hear a declaratory judgment cause of action.  *See*

22   *Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995).  A court may decline to do so when a claim

23   for damages subsumes the claim for declaratory relief.  *Rhodes v. Robinson*, 408 F.3d 559, 566

24   n.8 (9th Cir. 2005) ("because his claim for damages necessarily entails a determination whether

25   the officers' alleged conduct violated his rights, his separate request for declaratory relief is

26   subsumed by his damages action"); *Mendez-Arriola v. White Wilson Medical Center*, 2011 WL

16

1   3269451, at *7 (N.D. Fla. July 29, 2011) (a determination whether a contract was adequately

2   performed is unrelated to the purpose behind the Declaratory Judgment Act); *Fortran Group*

3   *Intern., Inc. v. Tenet Hosp. Ltd*, 2010 WL 4366380, at *3 (M.D. Fla. Oct. 28, 2010) (finding

4   claim for declaratory relief subsumed in breach of contract action when both arose from same set

5   of facts); *but see Johnson v. Geico Casualty Co*., 516 F.Supp.2d 351 (D. Del. 2007) (declining to

6   dismiss claim for declaratory relief when claims were not fully developed).  At this stage of the

7   litigation, the court declines to dismiss the cause of action for declaratory relief given the lack of

8   sufficient information to determine the extent of any overlap here.  The court thus cannot

9   determine "whether declaratory judgment would serve no useful purpose in clarifying the legal

10  rights and relationships at issue." *Id*.

11                    F.  Claim Fourteen – Accounting Against Christmas And Calibur11

12                    In their motion to dismiss, defendants assert without citation to authority that

13  several claims, including the claim for accounting, should be dismissed "because they are either

14  duplicative of other claims or are for remedies, such that they are not claims."  ECF No. 17 at 26.

15  In their reply, they cite a single case for the proposition that accounting is a remedy, not a cause

16  of action.  ECF No. 51 at 10.

17                    "A cause of action for an accounting requires a showing that a relationship exists

18  between the plaintiff and defendant that requires an accounting, and that some balance is due the

19  plaintiff that can only be ascertained by an accounting."  *Teselle v. McLoughlin*, 173 Cal.App.

20  4th 156, 179 (2009) (citing *Brea v. McGlashan*, 3 Cal.App. 2d 454, 460 (1934); *Park v. U.S.*

21  *Bank Natl. Ass'n.*, 2011 WL 4102211 (S.D. Cal., Sept. 13, 2011); *Canales v. Federal Home*

22  *Loan Mortg. Corp*., 2011 WL 3320478, at *8 (C.D. Cal. Aug. 1, 2011) (describing elements of

23  equitable claim for accounting).  Here, the complaint adequately describes the relationship

24  between plaintiff and the two defendants named in connection with the accounting claim, and the

25  fact that there is an unknown sum of money due to plaintiff stemming from that relationship.

26  FAC ¶¶ 25, 52, 158-163.

1         Accordingly, IT IS HEREBY ORDERED that:

2         1.  Defendants' motion to dismiss (ECF No. 17) is granted as to the fraud claim

3 against BGRMods and EinsteinMods, but denied in all other respects:

4         2.  Plaintiff may file a second amended complaint within twenty-one (21) days of

5 the date of this order or may file a notice indicating it wishes to proceed on the first amended

6 complaint as modified by this order;

7         3.  Plaintiff's motion to strike (ECF No. 52) is granted;

8         4.  Argument on plaintiff's motion for a preliminary injunction (ECF No. 55) is

9 set for December 14, 2011 at 10:00 a.m.

10 DATED:  November 2, 2011.

11

12                                   UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26